Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/22/2016 09:07 AM CDT

State of Nebraska, appellee, v.
Angelo M. Bol, appellant.
___ N.W.2d ___

Filed July 22, 2016.    No. S-15-706.

1. **Pleas.** To support a finding that a defendant has entered a guilty plea freely, intelligently, voluntarily, and understandingly, a court must inform a defendant concerning (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. The record must also establish a factual basis for the plea and that the defendant knew the range of penalties for the crime charged.

2. **Trial: Interpreters.** The appointment of an interpreter for an accused at trial largely rests in the trial court's discretion.

3. ____: ____. A trial court does not abuse its discretion by failing to appoint an interpreter if the record shows that the defendant had a sufficient command of the English language to understand questions posed and answers given.

4. **Trial: Witnesses: Interpreters.** Generally, a defendant is entitled to an interpreter only if he or she timely requests one, or it is otherwise brought to the trial court's attention that the defendant or a witness has a language difficulty that may prevent meaningful understanding of, or communication in, the proceeding.

5. **Effectiveness of Counsel: Proof: Appeal and Error.** To establish ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient and that counsel's deficiency prejudiced the defendant.

6. **Effectiveness of Counsel: Evidence: Appeal and Error.** An appellate court addresses an ineffective assistance claim raised on direct appeal only if the record allows the court to adequately review the question without an evidentiary hearing.

Appeal from the District Court for Buffalo County: WILLIAM T. WRIGHT, Judge. Affirmed.

Charles D. Brewster, of Anderson, Klein, Brewster & Brandt, for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, MILLER-LERMAN, CASSEL, STACY, and KELCH, JJ.

CONNOLLY, J.

## SUMMARY

Angelo M. Bol pleaded no contest to first degree murder. The court accepted Bol's plea and sentenced him to life imprisonment. On appeal, Bol argues that his plea was involuntary and that the court should have appointed him an interpreter because he had trouble understanding the English language. We conclude that Bol could comprehend the proceedings and communicate in English. We therefore affirm.

## BACKGROUND

According to the prosecutor's factual basis to support Bol's plea of no contest, in December 2014, Bol got in a fight with the victim. The fight occurred at the meatpacking plant where they worked. Later, Bol's employer fired him. Bol went home and returned to the plant with a handgun. Bol waited a few hours for a shift change. While the victim was leaving the plant, Bol approached him, supposedly to ask a question. He then shot the victim several times in the torso and head. The victim died at the scene.

Although Bol focuses his assignments of error on the plea hearing, the record includes Bol's motion to suppress statements that he made at the scene and to an investigator for the county sheriff during questioning at the jail. Bol claimed that his statements were not freely and voluntarily made

because the court did not properly inform him of his constitutional rights.

Officers responding at the scene wondered if Bol could speak English because he never said a word. They learned that Bol was Sudanese and tried to find an interpreter to come to the jail. But when the investigator asked Bol during the booking procedure if he understood English, he said yes. His native language is Dinka Bor. The interpreter who came to the jail appeared to know Bol or to know of him, and the sheriff's office decided not to use him. Because Bol had answered questions during the booking procedure in English, the sheriff's office decided that an interpreter was unnecessary. The booking procedure took 3 to 4 minutes. Later, the investigator read Bol his *Miranda* rights, had him sign a waiver form, and told him that if he did not understand something, he needed to tell the investigator. Bol said that he was willing to speak to the investigator. During the 2-hour interview, Bol never said that he did not understand a question.

Immigration officials told the investigator that Bol came to the United States in 2001 and became a lawful permanent resident in 2004. In addition to working in various meatpacking plants, Bol obtained a commercial driver's license. The court overruled the motion to suppress Bol's statements, finding that Bol gave his consent freely and voluntarily.

At the plea hearing, Bol's attorney stated that Bol had reached a plea agreement with the State. In exchange for Bol's plea of guilty or no contest to first degree murder, the State agreed to dismiss the charge of using a weapon to commit a felony. The court informed Bol that he would give up the constitutional rights the court would next describe by pleading guilty or no contest to the charges. The court informed Bol that he had the right to (1) have a trial by a jury of 12 persons or the judge alone; (2) be presumed innocent; (3) have guilt proved beyond a reasonable doubt; (4) have the court determine whether bond was appropriate; (5) be represented by counsel at the county's expense if he could not

afford an attorney; (6) remain silent and not testify, or testify if he wished; (7) have witnesses against him testify and cross-examine them; (8) call witnesses and present evidence; and (9) use the court's subpoena power to compel a witness' testimony. Conversely, the court explained that Bol still had the right to counsel through sentencing and a direct appeal but that he would likely waive any court error to that point in the proceedings by entering a plea.

After this explanation, the court asked Bol a series of questions calling for yes or no answers. First, it asked Bol whether he had a condition or illness, or had used any substance, that would affect his ability to understand. Bol said no. After Bol's attorney described the plea agreement, Bol confirmed to the court that the stated agreement was correct and that he was satisfied with his attorney's advice and representation. Bol denied being compelled to comply with the agreement. The following colloquy then occurred:

[Court]: Do you understand that if you plead guilty or no contest to Count I in the amended information, which now charges you with first-degree murder, a Class IA felony, you will, in essence, be telling this Court that you committed the crime described in Count I or at least you do not contest the accuracy of the facts stated in Count I; do you understand that?

[Bol]: No.

[Court]: Okay. What is it about that you don't understand?

[Bol]: The process, the way it work.

[Court]: All right. Basically what's going to happen is if you plead guilty or no contest, there will not be any trial. What will happen is you are telling the Court that I did that crime. Or you are saying I'm not going to agree that I did that crime, but I am going to say that I'm not going to contest it[.] I'm not going to argue against anything that's said in Count I.

[Bol]: Well, yeah.

[Court]: Do you understand that?

[Bol]: Yeah.

[Court]: Okay. In this particular case the State has filed an amended information, that is, it has changed the original information. The way they changed it is they have dismissed the second count. That leaves one count only against you. That count now charges you with first-degree murder, which is a Class IA felony, . . . one of the most serious levels of felony under Nebraska law.

. . . .

Do you understand that is the charge or count to which you will be pleading guilty or no contest today?

[Bol]: Yes.

. . . .

[Court]: Now, did you hear my description of the rights that you have under the constitution of the United States, the constitution of the State of Nebraska and the laws of both?

[Bol]: Yes.

[Court]: Do you have any questions with regard to those rights?

[Bol]: No.

[Court]: Do you understand that you will waive or give up all the rights I have told you you will waive or give up, if you plead guilty or no contest?

[Bol]: Yes.

[Court]: Do you understand if you plead guilty or no contest, I'll find you guilty of Count I, first-degree murder, a Class IA felony, without a trial; do you understand that?

[Bol]: What that mean?

[Court]: All right. Again, I want to make sure you understand this very clearly. If you plead guilty or no contest to Count I, I'm going to find you guilty of Count I, but there is going to be no trial. Your admission that you are guilty will be the sole basis upon which I will

make a determination and I will find you guilty. Do you understand that?

[Bol]: Yes.

The court asked the prosecutor to advise Bol of the potential penalties he faced if he pleaded guilty or no contest. The prosecutor stated that "first-degree murder is a Class IA felony, punishable by a term of life imprisonment. That is the sentence." The court asked Bol if he understood the potential penalties; Bol said yes.

Next, the court then explained that Bol's conviction was likely to adversely affect his ability to remain in the country or become naturalized, "assuming that you are ever released from prison." When the court asked Bol if he still wished to enter a plea of guilty or no contest, his attorney stated that Bol had a question about the immigration consequences. When the court again explained that if Bol were ever released, his conviction would adversely affect his ability to stay in the country, Bol asked, "How can I leave if I will be sentenced to life?" The court responded as follows:

[Court]: That's correct; however, life sentences are not always necessarily life sentences. There are occasions when persons who are sentenced to life in prison get released, perhaps long after the prison term commences, but you need to know that if that would occur for some reason unknown to us at this point, that most likely would adversely affect your ability to remain in this country, work in this country or ever complete the naturalization process. Do you understand that?

[Bol]: Correct.

[Court]: All right. Would you please stand. . . . [W]ith regard to Count I of the amended information . . . charging you with first-degree murder, a Class IA felony under Nebraska law, how, sir, do you plead? What is your plea?

[Bol]: Guilty or no contest.

[Court]: It has to be one or the other. It can't be both.

After an off-the-record discussion between Bol and his attorney, the court and Bol further conversed:

[Court]: . . . [L]et's do this for purposes of the record, you are apparently having a little bit of difficulty understanding. I want to make sure you understand. There is little difference between a plea of guilty or no contest. Both will result in a guilty judgment. The only difference is that a plea of guilty can be used against you in some later court proceeding as an identification of guilt. A no contest plea typically cannot be used in most other civil and criminal proceedings, as the plea of guilty can be used. That's the only difference. Both will result in the finding you are guilty. Do you understand that?

[Bol]: It's kind of difficult to understand that.

[Court]: I understand that. Let's go over it one more time. If you plead guilty, it's going to happen because I'm going to find you guilty. I'm going to enter a judgment of guilt on first-degree murder, okay. If you plead no contest, I'm going to find you guilty, I'm going to enter a judgment of guilty of first-degree murder.

The only difference between the two pleadings is the potential affect they might have on their use against you in some other civil or criminal proceedings. Typically a no contest plea cannot be used in other civil or criminal proceedings. That is, your plea of guilty can be used in certain other civil or criminal proceedings. That's the only difference between the two pleas. Both are going to result in a judgment of guilt. Which one do you wish to enter?

[Bol]: Plead no contest.

. . . .

[Court]: All right. Thank you. . . . [L]isten carefully to me. Has anyone threatened, pressured or forced you to enter this plea against your will?

[Bol]: Yeah.

[Court]: Okay. Did you understand what I just said? It's extremely important . . . that you know what is going on. What I want to make sure of is that no one has threatened, beat you, tortured you, done anything similar to that to get you to enter this plea. Has anyone done anything like that?

[Bol]: No.

[Court]: Has anyone promised you anything that isn't reflected in this hearing today —

[Bol]: No.

[Court]: — to get you to enter this plea?

[Bol]: No.

[Court]: Okay. Thank you. You can be seated.

After this colloquy, the court asked the prosecutor to provide the factual basis for the plea. The court found beyond a reasonable doubt that a factual basis for the plea existed and that Bol understood his rights, the nature of the charges, and the possible penalties and consequences. It found that Bol had entered his plea freely, voluntarily, knowingly, and intelligently. It accepted Bol's plea and judged him guilty of first degree murder.

Later, at the sentencing hearing, Bol extensively spoke about the workplace harassment he had suffered to explain why he had committed the crime. This explanation comprises 6 pages of transcript and showed Bol's competence with English. When the court explained how his actions showed that he had planned the killing and intended to kill the victim, Bol agreed. He did not appear to have any problem following the court's extensive comments. The court sentenced him to life in prison.

## ASSIGNMENTS OF ERROR

Bol assigns, restated, that the court erred by (1) accepting Bol's plea without ensuring that he understood the charges against him and his constitutional rights; (2) determining that Bol entered his plea freely, intelligently, voluntarily, and

understandingly; (3) not appointing Bol an interpreter; and (4) failing to inform Bol of the minimum and maximum penalties for first degree murder. Bol also assigns that (5) his trial counsel was ineffective for not assuring that Bol understood the proceedings.

## ANALYSIS

Bol generally argues that he "did not understand what was going on."[1] As a result, he contends that his plea was involuntary and that the court should have appointed him an interpreter.

[1] To support a finding that a defendant has entered a guilty plea freely, intelligently, voluntarily, and understandingly, a court must inform a defendant concerning (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination.[2] The record must also establish a factual basis for the plea and that the defendant knew the range of penalties for the crime charged.[3]

[2,3] Courts have held that a defendant's inability to comprehend criminal proceedings or communicate in English at such proceedings can result in a violation of the defendant's due process and Sixth Amendment rights.[4] But like most other courts,[5] in *State v. Topete*,[6] this court adopted an abuse of discretion standard for a court's decision whether a defendant requires an interpreter:

---

[1] Brief for appellant at 9.

[2] *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015).

[3] *Id.*

[4] See 2 Barbara E. Bergman & Nancy Hollander, Wharton's Criminal Evidence § 8:5 (15th ed. 1998 & Cum. Supp. 2015-16).

[5] See, *id.*; Annot., 32 A.L.R.5th 149, § 29 (1995).

[6] *State v. Topete*, 221 Neb. 771, 773, 380 N.W.2d 635, 636 (1986).

The appointment of an interpreter for an accused at trial is a matter resting largely in the discretion of the trial court.[7]

Even though a defendant might not speak grammatically correct English, where the record satisfactorily demonstrates that such defendant had a sufficient command of the English language to understand questions posed and answers given, there has been no abuse of discretion in refusing to appoint an interpreter.[8]

If a defendant understands and communicates reasonably well in the English language, the mere fact that such defendant might be able to accomplish self-expression a little better in another language does not warrant utilizing an interpreter at trial.[9]

Nebraska statutory law requires the appointment of an interpreter in a court proceeding . . . when the defendant is "unable to communicate the English language."[10]

Section 25-2401 (Reissue 2008) is essentially the same as it was in 1986. It provides that it is

the policy of this state that the constitutional rights of persons unable to communicate the English language cannot be fully protected unless interpreters are available to assist such persons in legal proceedings. It is the intent of sections 25-2401 to 25-2407 to provide a procedure for the appointment of such interpreters to avoid injustice and to assist such persons in their own defense.

In 1987, the Legislature somewhat amended the interpreter statutes as part of a law requiring interpreters for deaf or hard

---

[7] *Perovich v. United States*, 205 U.S. 86, 27 S. Ct. 456, 51 L. Ed. 722 (1907); *Prokop v. State*, 148 Neb. 582, 28 N.W.2d 200 (1947).

[8] *State v. Faafiti*, 54 Haw. 637, 513 P.2d 697 (1973).

[9] *Flores v. State*, 509 S.W.2d 580 (Tex. Crim. 1974).

[10] Neb. Rev. Stat. § 25-2401 (Reissue 1979).

of hearing persons.[11] The most significant change in chapter 25 concerned the definition of deaf person.[12] The legislative history does not suggest that the 1987 amendments were a response to *Topete*.[13]

[4] Neither Bol nor his attorney requested an interpreter. This failure is not a waiver of Bol's due process rights, but it is relevant to whether the court should have recognized on its own that Bol needed interpretative services. Generally,

> the defendant in a criminal proceeding may be entitled to have an interpreter provided only where he or she timely requests one, or it is otherwise brought to the trial court's attention that the defendant or a witness has a language difficulty that may prevent meaningful understanding of, or communication in, the proceeding.[14]

We conclude that the record shows that Bol had the ability to comprehend the proceedings and communicate in English. So the court did not violate Bol's constitutional rights by accepting his no contest plea. Nor did it abuse its discretion by not appointing Bol an interpreter sua sponte. And the claimed language barrier did not render Bol's plea involuntary.

Bol argues that he did not freely, intelligently, voluntarily, and understandingly enter his plea because no one told him about the range of penalties for first degree murder. At the court's direction, the prosecutor told Bol that the punishment was "a term of life imprisonment. That is the sentence." Bol suggests that the prosecutor should have instead stated that

---

[11] See 1987 Neb. Laws, L.B. 376, § 3, codified at Neb. Rev. Stat. § 20-152 (Reissue 2012).

[12] See 1987 Neb. Laws, L.B. 376, § 12.

[13] See Judiciary Committee Hearing, L.B. 376, 90th Leg., 1st Sess. 1-8 (Feb. 11, 1987).

[14] 32 A.L.R.5th, *supra* note 5, § 22 at 260.

"the minimum sentence was life imprisonment and the maximum sentence was life imprisonment."[15]

We determine that Bol knew the penalty for his crime. First degree murder is a Class IA felony.[16] Under Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2014), the punishment for a Class IA felony is simply "Life imprisonment." There is no maximum or minimum penalty.

Nor did the court err by telling Bol that pleading no contest to first degree murder would probably lower his chance of living in the United States or becoming a citizen, should Nebraska ever release Bol for "some reason unknown to us at this point." The court had a duty to advise Bol about the immigration consequences of his plea under Neb. Rev. Stat. § 29-1819.02(1) (Reissue 2008). Failure to do so could have allowed Bol to vacate his conviction.[17]

Finally, Bol argues that his attorney provided ineffective assistance by (1) failing to ensure that he understood his constitutional rights and the likely consequences of entering a plea; (2) failing to stop the plea hearing when it became apparent that Bol had no idea what was going on; and (3) failing to request an interpreter.

[5,6] To show that his counsel was ineffective, Bol must show that his counsel's performance was deficient and that counsel's deficiency prejudiced him.[18] The fact that a defendant raises an ineffective assistance of counsel claim on direct appeal does not necessarily mean that we can resolve it.[19] The key is whether the record allows us to adequately review the question.[20] We will not address an ineffective assistance

---

[15] Brief for appellant at 12.

[16] Neb. Rev. Stat. § 28-303(2) (Reissue 2008).

[17] § 29-1819.02(2).

[18] See *State v. Collins*, 292 Neb. 602, 873 N.W.2d 657 (2016).

[19] *Id.*

[20] *Id.*

of counsel claim on direct appeal if it requires an evidentiary hearing.[21]

Here, the record on direct appeal shows that Bol's counsel was not ineffective. Bol had the ability to comprehend the proceedings and communicate in English. The record shows that Bol had a sufficient command of the English language to understand the questions posed and the answers given. So his counsel was not ineffective for failing to ensure that Bol understood his constitutional rights, failing to stop the plea hearing, and failing to request an interpreter.

## CONCLUSION

Bol understood the proceedings. His plea was voluntary, the court did not abuse its discretion by not appointing him an interpreter, and his counsel was not ineffective. We therefore affirm.

Affirmed.

---

[21] *Id.*