IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BRUNGARDT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MELVIN A. BRUNGARDT, APPELLANT.

Filed May 16, 2017.    Nos. A-16-564, A-16-566.

Appeals from the District Court for Jefferson County: PAUL W. KORSLUND, Judge. Judgment in No. A-16-564 affirmed in part, and in part vacated and cause remanded with directions. Judgment in No. A-16-566 affirmed.

Joseph M. Casson for appellant.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

MOORE, Chief Judge, and INBODY and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

This memorandum opinion involves two appeals, cases Nos. A-16-564 and A-16-566, which have been consolidated for briefing and disposition. In case No. A-16-564, Melvin A. Brungardt pled guilty to: (1) carrying a concealed weapon, a Class I misdemeanor, and (2) failure to appear, a Class IV felony. On Count I, the district court for Jefferson County sentenced him to 12 months' imprisonment followed by 9 months of post-release supervision. On Count II, the district court sentenced Brungardt to 2 years' imprisonment followed by 12 months of post-release supervision. The sentences in Counts I and II were ordered to run concurrently with each other, but consecutively to the sentence in case No. A-16-566.

In case No. A-16-566, Brungardt pled guilty to attempted possession of a controlled substance, a Class I misdemeanor, and was sentenced to 24 months' probation. Five months later the State filed a motion to revoke Brungardt's probation, alleging he violated several conditions of his probation. Brungardt admitted to allegations set forth in the motion to revoke and the district court for Jefferson County subsequently revoked Brungardt's probation. He was then sentenced to 12 to 12 months' imprisonment on his conviction for attempted possession of a controlled substance.

On appeal in both cases, Brungardt argues that the district court improperly advised him of potential sentences, denied his motion to continue sentencing, and sentenced him to incarceration rather than probation. Brungardt also argues that his counsel was ineffective. For the following reasons, we affirm in part, and in part vacate and remand with directions.

II. BACKGROUND

1. CASE NO. A-16-564

On October 23, 2015, the State filed an information charging Brungardt with possession of a deadly weapon by a felon, fugitive, or prohibited person, a Class III felony. See Neb. Rev. Stat. § 28-1206 (Reissue 2016). The State alleged that on September 1, Brungardt "possess[ed] a knife, being a person who had previously been convicted of a felony or who [was] a fugitive from justice or who [was] the subject of a current and validly issued domestic violence protection order and [was] knowingly violating such order[.]" We note that this offense occurred after the August 30, 2015, effective date of 2015 Neb. Laws, L.B. 605.

At his arraignment hearing on November 5, 2015, Brungardt pled not guilty. He failed to appear at a status hearing on February 4, 2016, and a warrant for his arrest was issued the next day. On February 5, the State filed an amended information, adding a charge of failure to appear, a Class IV felony. See Neb. Rev. Stat. § 29-908 (Reissue 2016).

On March 22, 2016, the State and Brungardt entered into a plea agreement, wherein: (1) the State agreed to amend Count I of the information from possession of a deadly weapon by a felon, fugitive, or prohibited person, a Class III felony, to carrying a concealed weapon, a Class I misdemeanor; (2) Brungardt agreed to plead guilty or no contest to the amended charge of carrying a concealed weapon and to the charge of failure to appear; and (3) Brungardt agreed to admit to the allegations set forth in a separate case (A-16-566 below; specifically the motion to revoke probation filed on February 16, 2016). Regarding the separate case, the agreement notes that Brungardt is subject to revocation for a Class I misdemeanor for attempted possession of a controlled substance. There was no agreement as to sentencing. On March 22, the State amended its information and charged Brungardt with (1) first offense carrying a concealed weapon, a Class I misdemeanor, pursuant to Neb. Rev. Stat. § 28-1202 (Reissue 2016), and (2) failure to appear, a Class IV felony.

At a hearing on March 22, 2016, pursuant to the plea agreement, Brungardt pled guilty to Counts I and II of the amended information. According to the factual basis provided by the State:

[O]n or about September 1, 2015, Chad Sprunk of the Fairbury Police Department . . . was behind a white motor vehicle that he observed to be driven by . . . Brungardt . . . . The officer knew Mr. Brungardt from prior law enforcement contacts, and he ran a warrant

check on Mr. Brungardt and was advised that while he did have a valid license, there was a York County warrant for his arrest.

So he made contact with Mr. Brungardt at Casey's gas station . . . asked him to step back to his vehicle and advised him that there was a warrant for [his] arrest out of York County. He was taken into custody, and while conducting a patdown search, the officer located a concealed knife in [Brungardt's] right pocket. The officer took the knife and observed that it had a blade over three and a half inches. The officer knew that Mr. Brungardt was a convicted felon previously and was not supposed to be in possession of a deadly weapon.

All of those events with regard to Count I, as amended, to the offense of carrying a concealed weapon occurred here in Jefferson County, Nebraska.

With regard to Count II, at the time of the allegation, February 4th of 2016, [Brungardt] was still charged with the offense of possession of a deadly weapon by a felon, that being a felony offense. [Brungardt] did not appear in this court for a court appearance . . . in this particular case.

. . . [Brungardt] did not turn himself into the local sheriff within three days hereafter, and so the Information was amended and filed with the additional charge for failure to appear.

And all these events occurred with regard to Count II here in Jefferson County, Nebraska.

The district court accepted Brungardt's guilty pleas to Counts I and II.

The sentencing hearing was held on May 5, 2016. On Count I, the district court sentenced Brungardt to 12 months' imprisonment, with 9 days' credit for time served, followed by 9 months of post-release supervision. On Count II, the district court sentenced Brungardt to 2 years' imprisonment, with 9 days' credit for time served, followed by 12 months of post-release supervision. The sentences in Counts I and II were ordered to run concurrently; however, the sentences were to run consecutively to Brungardt's sentence in his separate case (A-16-566). An order memorializing the court's sentence was filed that same day. Brungardt now appeals.

2. CASE NO. A-16-566

On April 22, 2015, the State filed an information charging Brungardt with possession of a controlled substance, a Class IV felony, pursuant to Neb. Rev. Stat. § 28-416(3) (Cum. Supp. 2014). The State alleged that on March 22, Brungardt "did knowingly or intentionally possess a controlled substance other than marijuana, to wit: methamphetamine[.]" We note that this offense occurred before the August 30, 2015, effective date of L.B. 605.

In July 2015, the State and Brungardt entered into a plea agreement wherein (1) the State agreed to amend the information from possession of methamphetamine, a Class IV felony, to attempted possession of methamphetamine, a Class I misdemeanor; (2) Brungardt agreed to plead guilty or no contest to the amended charge; and (3) the State would not object to a request for probation. On July 2, the State amended its charge against Brungardt to attempted possession of

methamphetamine, a Class I misdemeanor. See § 28-416(3); Neb. Rev. Stat. § 28-201 (Cum. Supp. 2014).

At a hearing on July 2, 2015, pursuant to the plea agreement, Brungardt pled guilty to the amended information. According to the factual basis provided by the State:

On March 22nd, 2015, Dispatch advised [Nick Georgie of the Fairbury Police Department] that . . . there had been a call about a male identified as Melvin Brungardt, who was suicidal. The reporting party was a sister-in-law . . . and that Mr. Brungardt was headed for the railroad tracks and was going to kill himself. So various officers went to search for him. They finally were referred to a house near 14th and Maple Streets . . . here in Fairbury and went to that location to look for [Brungardt].

. . . .

He was located . . . outside the residence several blocks from the railroad tracks. When asked, [Brungardt] denied being suicidal. Officer Joshua Jacobi brought over a backpack and a plastic bag full [of] clothes and stated they were [Brungardt's] property. He verified that to the officers. Officer Jacobi also turned over a pocket knife to Nick Georgie that was found in [Brungardt's] pocket during a patdown.

. . . The officer was, then, advised that he had located a suspected methamphetamine pipe in the backpack while inventorying the backpack in [sic] a plastic bag in an attempt to locate any more knives. It was located in the zipper part of the backpack.

. . . The pipe was field tested and tested positive for methamphetamine residue . . . .

All these events have occurred in Jefferson County, Nebraska . . . .

The district court accepted Brungardt's guilty plea. On September 3, the district court sentenced him to 24 months' probation, subject to various conditions.

On February 16, 2016, the State filed an affidavit and motion to revoke probation, alleging that Brungardt violated various terms of his probation. Brungardt failed to appear at the March 17 hearing on the State's motion, and a warrant for his arrest was issued.

On March 22, 2016, the State and Brungardt entered into a plea agreement, detailed above under case No. A-16-564. At a hearing on March 22, pursuant to the plea agreement, Brungardt admitted to the allegation in the State's affidavit and motion to revoke probation. According to the factual basis provided by the State:

[T]he State would expect the witness for the State to be Amanda Schaefer from the state probation office. The State would ask the court to take judicial notice of its own file in this case finding that the Court previously sentenced Mr. Brungardt on September 3rd, 2015, to a two-year term of probation for attempted possession of a controlled substance, making that a Class I misdemeanor offense.

Ms. Schaefer would be called, and she would testify, at that time, [Brungardt] violated term three of his Order of Probation . . . . He was required to report as directed by his probation officer, and that he failed to report for a scheduled office appointment on January 6th of 2016, which was within the 24-month period. She would also testify that [Brungardt] violated term eight of his probation, which is to abstain from the use of alcohol or prescription or controlled substances, except by prescription, and to submit to chemical

testing for blood, breath or urine. She would further testify that [Brungardt] failed to report for drug and alcohol testing on December 27th of 2015, and in the month of January, on the 5th, the 12th, the 16th, the 21st and the 24th in 2016, and that back on December 8th of 2015, he tested positive for marijuana, amphetamine and methamphetamine.

She will also testify that he violated term 15 of his Order of Probation. He was supposed to serve a jail sentence in the local jail, a 15-day jail sentence, starting February 1st of 2016 at 9 a.m., and that he failed to report to the jail . . . to serve that jail sentence.

Finally, she would testify that he violated term 16 of his probation. He was to complete a substance abuse evaluation, follow its recommendations and to do 20 hours of community service, as directed by the probation officer, and that as of February 3rd of 2016, [Brungardt] has not completed that substance abuse evaluation or completed 20 hours of community service.

The district court accepted Brungardt's admissions to the allegations in the State's motion.

At a hearing on May 5, 2016, the district court revoked Brungardt's probation and sentenced him to 12 to 12 months' imprisonment, with 5 days' credit for time served. An order memorializing the court's sentence was filed that same day. Brungardt now appeals.

We sustained the State's motion to consolidate case Nos. A-16-564 and A-16-566 for briefing and disposition.

## III. ASSIGNMENTS OF ERROR

Consolidated, Brungardt assigns: (1) the district court erred in incorrectly advising Brungardt as to the penalty for (a) the crime for which he was convicted in case No. A-16-564, Count I, and (b) the crime for which his probation was revoked and he was re-sentenced in case No. A-16-566; (2) the district court abused its discretion in denying Brungardt's motion to continue the sentencing hearing; (3) the district court abused its discretion in sentencing Brungardt to prison instead of probation; and (4) his counsel was ineffective.

## IV. STANDARD OF REVIEW

A trial court is afforded discretion in deciding whether to accept guilty pleas, and an appellate court will reverse the trial court's determination only in case of an abuse of discretion. *State v. Wilkinson*, 293 Neb. 876, 881 N.W.2d 850 (2016). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Baxter*, 295 Neb. 496, 888 N.W.2d 726 (2017).

When issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below. *Wilkinson, supra*.

The revocation of probation is a matter entrusted to the discretion of a trial court. *State v. Johnson*, 287 Neb. 190, 842 N.W.2d 63 (2014).

A decision whether to grant a continuance in a criminal case is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Baxter, supra*.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Abejide*, 293 Neb. 687, 879 N.W.2d 684 (2016).

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id*. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. See *State v. Filholm, supra*.

## V. ANALYSIS

### 1. ADVISEMENT OF PENALTIES

To support a finding that a defendant has entered a guilty plea freely, intelligently, voluntarily, and understandingly, a court must inform a defendant concerning (1) the nature of the charge, (2) the right to assistance of counsel, (3) the right to confront witnesses against the defendant, (4) the right to a jury trial, and (5) the privilege against self-incrimination. *State v. Bol*, 294 Neb. 248, 882 N.W.2d 674 (2016). The record must also establish a factual basis for the plea and that the defendant knew the range of penalties for the crime charged. *Id*. It is the penalty aspect that is at issue in the current appeals.

Brungardt asserts the district court incorrectly advised him as to the penalty for: carrying a concealed weapon, the crime for which he was convicted in Count I of case No. A-16-564; and the crime for which his probation was revoked and he was re-sentenced in case No. A-16-566. He argues that because of the erroneous advisements, his guilty plea and admissions were not "knowingly and intelligently made" and he should therefore be permitted to withdraw his guilty plea to Count I and his admission to the probation violation. Briefs for appellant at 7.

### (a) Case No. A-16-564, Count I

Brungardt asserts the district court incorrectly advised him as to the penalty for carrying a concealed weapon. Specifically, Brungardt argues that his plea was not knowingly, intelligently, and voluntarily made because the court incorrectly advised him that "[t]here was no possibility of prison on that charge standing by itself . . . it's still one-year maximum but it's in the county jail." Brief for appellant at 7 (A-16-564).

Brungardt appeared for re-arraignment on an amended information on March 22, 2016; this was also the plea hearing. The district court initially advised Brungardt that the charge for first offense carrying a concealed weapon, a Class I misdemeanor, "carries a possible penalty of jail or prison for not more than one year or a fine of not more than $1,000 or both such fine and imprisonment." Brungardt acknowledged that he understood, and then pled guilty to the charge. After the State provided a factual basis for the plea, the district court accepted Brungardt's guilty plea.

The district court then stated it would order an updated presentence investigation report (PSI), and set a date for sentencing and disposition. Next, the district court addressed defense counsel's motion to withdraw because he was starting a new job. The court stated that it would

appoint new counsel at the conclusion of the hearing. The district court then proceeded to take up Brungardt's motion for bond. During the bond discussion, the court realized that it had improperly advised Brungardt on Count II of the amended petition earlier in the plea hearing, because it had advised as to the pre-L.B. 605 penalty for failure to appear.

The district court then re-advised Brungardt of the possible penalties on all charges. With regard to Count I, first offense carrying a concealed weapon, the district court said: "There is no possibility of prison on that charge standing by itself. The law has changed on Class I misdemeanors. Now, it's still one-year maximum but it's in the county jail." "And still the possible fine of up to a thousand dollars." Brungardt acknowledged that he understood. The district court asked Brungardt if there was anything he wanted to talk over with his attorney, and Brungardt said "No[.]" The district court then asked Brungardt if he still wanted the court to find him guilty and go forward with sentencing, and Brungardt responded, "Yes."

Brungardt's argument is based upon the district court's statements as to where the sentence could be served, jail or prison. "In general, under Nebraska law, a defendant must be informed of those consequences which affect the range of possible sentences or periods of incarceration for each charge and the amount of any fine to be imposed as a part of a sentence." *State v. Schneider*, 263 Neb. 318, 324, 640 N.W.2d 8, 13 (2002). See, also, *State v. Schnell*, 17 Neb. App. 211, 757 N.W.2d 732 (2008). Where a defendant was unaware of the penal consequences of his or her guilty plea because he or she had been misinformed by the court, his or her plea is not voluntary. See *State v. Golden*, 226 Neb. 863, 415 N.W.2d 469 (1987) (trial court explained sentences could be imposed concurrently or consecutively and did not inform defendant statute mandated consecutive sentence). However, we are unaware of any authority establishing that a defendant is entitled to an advisement as to where a term of incarceration could be served.

At the time of Brungardt's offense, a Class I misdemeanor was punishable by up to one year imprisonment, a $1,000 fine, or both fine and imprisonment. See Neb. Rev. Stat. § 28-106 (Supp. 2015). Section 28-106(2) provides:

> Sentences of imprisonment in misdemeanor cases shall be served in the county jail, except that sentences may be served in institutions under the jurisdiction of the Department of Correctional Services if the sentence is to be served concurrently or consecutively with a term for conviction of a felony and the combined sentences total a term of one year or more.

In the instant case, Brungardt was aware of the range of possible sentence or period of incarceration for the charge and the amount of any fine to be imposed as a part of a sentence. Prior to his initial plea to Count I, the district court advised Brungardt that the Class I misdemeanor, "carries a possible penalty of *jail or prison* for not more than one year or a fine of not more than $1,000 or both such fine and imprisonment." (Emphasis supplied.) After this advisement that "jail or prison" was a possibility, Brungardt entered his guilty plea. It was not until the re-advisement that the district court said: "There is no possibility of prison on that charge *standing by itself*. The law has changed on Class I misdemeanors. Now, it's still one-year maximum but it's in the county jail." (Emphasis supplied.) This statement by the district court was correct, although may have been misleading since, under § 28-106(2), the sentence could be served in prison if it was to be served

concurrently or consecutively with a term for conviction of a felony and the combined sentences total a term of one year or more. Given the circumstances of this case, we find that Brungardt was given all the advisements that were required and his plea was made knowingly, intelligently, and voluntarily.

(b) Case No. A-16-564, Count II

Brungardt argues, but does not assign, that the district court incorrectly advised him as to the penalty for failure to appear, the crime for which he was convicted in Count II. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Chacon*, 296 Neb. 203, ___ N.W.2d ___ (2017). Accordingly, we do not consider the propriety of the district court's advisement as to the penalty for failure to appear.

(c) Case No. A-16-566

Brungardt asserts the district court incorrectly advised him as to the penalty for the crime for which his probation was revoked and re-sentenced.

A hearing on the motion to revoke probation was held on March 22, 2016; this was also a plea hearing. The district court erroneously advised Brungardt that he had previously been convicted of "possession of a controlled substance, a Class IV felony[,]" and that if his probation was revoked, he could be "imprisoned for up to five years or fined up to $10,000 or be both fined and imprisoned." However, the actual conviction underlying the probation revocation proceeding was "attempted possession of a controlled substance," a Class I misdemeanor. At the time the underlying offense was committed in March 2015, Class I misdemeanors were punishable by up to one year imprisonment, a $1,000 fine, or both fine and imprisonment. See Neb. Rev. Stat. § 28-106 (Cum. Supp. 2014). (This offense prior to the August 30, 2015, effective date for L.B. 605; pursuant to Neb. Rev. Stat. § 28-116 (Reissue 2016), L.B. 605 does not apply to this offense.) (We note that Brungardt was properly advised of the conviction and penalty at the original plea hearing in July 2015.) Brungardt admitted the allegations in the State's motion to revoke his probation, despite the erroneous penalty advisement. Brungardt contends that while he "ultimately received a sentence of not more than 12 month[s] or less than 12 months, the advisement was none the less in error." Brief for appellant at 7 (A-16-566).

Case No. A-16-566 does not involve a guilty plea to criminal charges; it involves admission to a probation violation. Brungardt had already been convicted of attempted possession of a controlled substance. At the March 2016 hearing, as it related to case No. A-16-566, Brungardt was not facing any new charges, only a motion to revoke his probation. A motion to revoke probation is not a criminal proceeding. *In re Interest of Rebecca B.*, 280 Neb. 137, 783 N.W.2d 783 (2010); *State v. Schuetz*, 18 Neb. App. 658, 790 N.W.2d 726 (2010). A probation revocation hearing is considered a continuation of the original prosecution for which probation was imposed--in which the purpose is to determine whether a defendant or a juvenile has breached a condition of his existing probation, not to convict or adjudicate that individual of a new offense. *Id.* A probation revocation hearing is not part of a criminal prosecution or adjudication and therefore does not give rise to the full panoply of rights that are due a defendant at a trial or a

juvenile in an adjudication proceeding. *Id.* Accordingly, the requirements for entry of a guilty plea in a criminal proceeding are not applicable in this case.

Neb. Rev. Stat. § 29-2267 (Reissue 2008), which sets forth the applicable procedures for revoking probation, states in part:

> The probationer shall have the right to receive, prior to the hearing, a copy of the information or written notice of the grounds on which the information is based. The probationer shall have the right to hear and controvert the evidence against him, to offer evidence in his defense and to be represented by counsel.

Section 29-2267 also provides for a probationer's right to prompt consideration of the charge and a hearing upon proper notice. Violation of probation is not itself a crime or offense; the statute provides a mechanism whereby the previous probation is revoked and the court may impose a new sentence for the offense for which the offender was originally convicted or adjudicated. *In re Interest of Rebecca B., supra.*

The minimum due process protections required at a probation revocation hearing are as follows: (1) written notice of the time and place of the hearing; (2) disclosure of evidence; (3) a neutral factfinding body or person, who should not be the officer directly involved in making recommendations; (4) opportunity to be heard in person and to present witnesses and documentary evidence; (5) the right to cross-examine adverse witnesses, unless the hearing officer determines that an informant would be subjected to risk of harm if his or her identity were disclosed or unless the officer otherwise specifically finds good cause for not allowing confrontation; and (6) a written statement by the fact finder as to the evidence relied on and the reasons for revoking the conditional liberty. *State v. Johnson*, 287 Neb. 190, 842 N.W.2d 63 (2014). A penalty advisement is not one of the minimum due process protections described by the Nebraska Supreme Court as required at a probation revocation hearing. See *id*. However, even if the probation revocation proceeding required an advisement, the erroneous advisement at issue here did not prejudice Brungardt because he was advised of a higher potential penalty than the one he actually faced. See *State v. Russell*, 291 Neb. 33, 863 N.W.2d 813 (2015).

Although *Russell, supra*, involved an improper advisement at a plea hearing, it is nonetheless helpful here. In *Russell*, the district court advised Russell that the minimum penalty for his crime was 20 years' imprisonment, when in reality it was 15 years' imprisonment. The Nebraska Supreme Court held that Russell suffered no prejudice as a result of the erroneous advisement because his sentence of 40 to 50 years' imprisonment was within the statutory range of penalties and was also within the range of penalties articulated by the district court. The Supreme Court stated "[i]t is inconceivable that Russell would plead no contest after being advised of a 20-year minimum sentence but would not have entered such a plea if he were properly informed that the minimum sentence was 15 years." *Russell*, 291 Neb. at 42, 863 N.W.2d at 820-21.

In the instant case, the district court advised Brungardt that the penalty for his crime was up to 5 years' imprisonment, when in reality it was 1 year imprisonment. We find that Brungardt suffered no prejudice as a result of the erroneous advisement because his sentence of 12 to 12

months' imprisonment was within the statutory range of penalties and was also within the range of penalties articulated by the district court.

## 2. MOTION TO CONTINUE

Brungardt claims that the district court erred when it overruled his motion to continue the sentencing hearing so that he would have another opportunity to participate in his PSI.

At the sentencing hearing, the district court stated it had received and reviewed a PSI that pertained to both cases. He asked if defense counsel had an opportunity to review the PSI, and if he had any additions, corrections, or evidentiary showing. Defense counsel said, "No, just comments[.]" After defense counsel's remarks, which made no mention of the fact that Brungardt had not participated in the preparation of the PSI, the district court asked if there was any reason that Brungardt did not show up for the PSI. Defense counsel advised the court that Brungardt would be in a better position to provide an explanation, but indicated that there was a "failure to communicate with his former counsel or with the PSI [sic]." Upon inquiry by the court, Brungardt stated he "wasn't sure on which dates for sure when [he] had to be there." He told the court that the probation officer told him to contact her. He said "I called her and she told me I didn't show up for my meeting and then said I have to contact her. I didn't know when my meeting was because we didn't have anything scheduled." The court noted the probation officer tried to call Brungardt, and the court asked Brungardt if his phone changed. Brungardt responded:

> No. I didn't have the money to keep my phone turned on. So we got disconnected, and I told her the same thing while I was in jail. I didn't have a phone anymore. And I have been assured that she had my address. She knew where I was at. I've always been right there. I haven't run away. I've been right here in town where -- when I'm not here in town, I am either at work, visiting my family or in Beatrice visiting my children.

The court noted Brungardt's drug problem, his placement on intensive supervised probation in September 2015, his violations of the conditions of his probation, and the court's concern about the knife. The court said, "It's, really, the failure to comply with probation on just numerous occasions as well as for this presentence. So I don't have, really, a complete [PSI], because you didn't have any input in it because of your own doing. And I don't like to conclude this, but --." At that point, Brungardt's counsel interrupted and made a motion to continue, "to allow [Brungardt] the ability and opportunity to complete and participate in a PSI[.]" The court gave the State an opportunity to respond, and the State said it would like to proceed, noting that "part of the responsibility that someone has in a situation like Mr. Brungardt's is that they participate and do what they are supposed to do[. He] needs to show up when he was supposed to." The court denied the continuance, and proceeded with sentencing.

We conclude that the district court did not abuse its discretion when it overruled the motion to continue sentencing. The Nebraska Supreme Court has said that "[w]here the criminal defendant's motion for continuance is based upon the occurrence or nonoccurrence of events within the defendant's own control, denial of such motion is no abuse of discretion." *State v. Baxter*, 295 Neb. 496, 499-500, 888 N.W.2d 726, 731 (2017) (quoting *State v. Eichelberger*, 227 Neb. 545, 556, 418 N.W.2d 580, 588 (1988)). The PSI states that Brungardt failed to contact

probation regarding his PSI, and that probation "attempted to contact him on several different occasions however his last provided phone number appeared to be out of service." Brungardt admits he let his phone lapse, but blames the probation officer for not seeking him out, stating, "She knew where I was at." Brungardt had from the time of the plea hearing on March 22, 2016, until the sentencing hearing on May 5, to contact probation and complete his PSI, but failed to do so. Brungardt's failure to complete his PSI was due to events within his own control. We therefore conclude that the district court did not abuse its discretion when it overruled his motion to continue sentencing.

### 3. EFFECTIVENESS OF COUNSEL

Brungardt asserts that his counsel was ineffective for failing to make a timely motion to continue sentencing in order to allow Brungardt to participate in the preparation of the PSI. He argues he was denied a just result when instead of "immediately ask[ing] for a continuance at the commencement of the sentencing hearing," counsel "interrupt[ed] the sentencing court in the middle of pronouncing sentence." Briefs for appellant at 11 (A-16-564) and 10-11 (A-16-566).

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Sellers*, 279 Neb. 220, 777 N.W.2d 779 (2010). The two prongs of this test, deficient performance and prejudice, may be addressed in either order. *State v. Fester*, 287 Neb. 40, 840 N.W.2d 543 (2013). To show prejudice under the prejudice component of the *Strickland* test, the petitioner must demonstrate a reasonable probability that but for his or her counsel's deficient performance, the result of the proceeding would have been different. *State v. Robinson*, 285 Neb. 394, 827 N.W.2d 292 (2013). Defense counsel is not ineffective for failing to raise an argument that has no merit. *State v. Young*, 279 Neb. 602, 780 N.W.2d 28 (2010).

Brungardt cannot demonstrate a reasonable probability that his motion to continue the sentencing hearing would have been granted had the motion been made earlier in the hearing. Brungardt's counsel moved to continue prior to the court's pronouncement of sentence. The district court gave the State an opportunity to respond to the motion, and the State said it would like to proceed because Brungardt needed to "show up when he was supposed to." The district court denied the motion to continue, a ruling which we have already determined was not an abuse of discretion. Nothing in the record suggests that the court's denial was based on the timing of the motion. Accordingly, Brungardt cannot demonstrate a reasonable probability that his motion to continue the sentencing hearing would have been granted had the motion been made earlier in the hearing.

### 4. SENTENCES

Brungardt asserts the district court abused its discretion in sentencing him to prison instead of probation. He contends his "failure to meet the probation officer . . . was critical to his case and the absence of the participation denied him the opportunity for a just result." Brief for appellant at 10. He acknowledges that the sentences imposed were within the statutory limits, but argues that "had [he] been given the opportunity to participate in the preparation of the presentence

investigation report he could have brought out mitigating factors that would have persuaded the court to keep him on probation." Briefs for appellant at 11 (A-16-564) and 10 (A-16-566).

We have already found that Brungardt's failure to complete his PSI was due to events within his own control, and we concluded that the district court did not abuse its discretion when it overruled his motion to continue sentencing. Furthermore, Brungardt was allowed to address the district court at sentencing, at which time Brungardt told the court about his troubles, including a divorce the prior year, difficulty seeing his children, and a history of drug use that had gotten worse as he tried to "mask [his] pain." If other mitigating factors existed, Brungardt certainly could have brought them to the court's attention at the sentencing hearing.

We now address whether the district court abused its discretion in sentencing Brungardt to prison instead of probation in case Nos. A-16-564 and A-16-566. Factors a judge should consider in imposing a sentence include the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

Brungardt was 29 years old at the time of sentencing and had a high school diploma. At the plea hearing he informed the district court that he was unemployed when he was taken into custody, but had done "[a] lot of construction work" in the past. He was divorced and has two children. The PSI notes that Brungardt failed to contact probation regarding the PSI, and the "original PSI [from July 2015] is being included for the Court[']s review as this PSI is being submitted to the Courts [sic] incomplete."

Brungardt has a lengthy criminal history dating back to 2004. He has been convicted of "possess or use drug paraphernalia" (five times), "minor possess/sell/consume alcohol" (twice), possession of marijuana--1 ounce or less (three times), possession of K2 or marijuana--1 ounce or less, unlawful delivery of marijuana and unlawful possession of marijuana (Oregon convictions), obstructing a peace officer, and criminal mischief. He has also been fined for numerous traffic violations. Brungardt was previously on probation in Nebraska in 2005 and had his probation revoked. He was also placed on probation for his Oregon convictions; the PSI notes:

> The Defendant was found guilty and placed on Probation and his case was transferred to Nebraska for supervision. On August 20, 2012, a Violation of Probation was submitted to Oregon. On October 8, 2012, a nationwide extradition warrant was issued. On October 18, 2012, the case was closed out and returned to Oregon. On March 7, 2013, the Defendant's Probation was continued for 36 months and the case was transferred back to Nebraska for supervision. On December 22, 2015, a Probation Violation was submitted to Oregon, Oregon advised to continue supervision. On February 8, 2016, another Probation Violation was submitted to Oregon and on March 22, 2016, the case was closed out and returned to Oregon.

Regarding his current convictions in case No. A-16-564, Brungardt was a convicted felon found with a knife in his pocket, and then failed to appear at a court hearing. In case No. A-16-566, Brungardt violated the terms of his probation for his sentence on an attempted possession of a controlled substance conviction.

As part of the 2015 PSI, the probation officer conducted a level of service/case management index. Brungardt was assessed as a high risk to reoffend. In the current PSI, although the probation officer did not specifically recommend against probation, the probation officer had concerns in regards to Brungardt being on probation "due to his continued substance abuse and due to his failure to comply with Probation requirements." The probation officer also noted that Brungardt "has a pattern of absconding from Probation."

### (a) Case No. A-16-564, Count I

Brungardt was convicted of carrying a concealed weapon, a Class I misdemeanor. His offense occurred after the effective date of L.B. 605, and was punishable by up to one year imprisonment, a $1,000 fine, or both fine and imprisonment. See § 28-106 (Supp. 2015). However, at the sentencing hearing, the district court erroneously sentenced Brungardt for possession of a deadly weapon, a Class III felony, and ordered him imprisoned for a period of 12 months, followed by 9 months of post-release supervision. The district court's written order also erroneously stated that Brungardt was convicted of "Possession of Deadly Weapon by Felon, Fugitive or Prohibited Person," a Class III felony, and said Brungardt was to be imprisoned for a period of 12 months followed by 9 months of post-release supervision. The sentence imposed on Brungardt was within the statutory limits for a Class III felony, but not for a Class I misdemeanor because it included a period of post-release supervision. See § 28-105 (Supp. 2015); § 28-106. As noted by the State, an appellate court always reserves the right to note plain error which was not complained of at trial or on appeal. See *State v. Chacon*, 296 Neb. 203, ___ N.W.2d ___ (2017). Consequently, we vacate Brungardt's sentence for Count I in case No. A-16-564 and remand the cause for resentencing.

### (b) Case No. A-16-564, Count II, and Case No. A-16-566

In case No. A-16-564, Count II, Brungardt was convicted of failure to appear, a Class IV felony, and sentenced to 2 years' imprisonment followed by 12 months' post-release supervision. His offense occurred after the effective date of L.B. 605, and was punishable by up to 2 years' imprisonment, a $10,000 fine, or both fine and imprisonment; and required 9 to 12 months' post-release supervision if imprisonment was imposed. See § 28-105 (Supp. 2015).

Brungardt's sentence is within the statutory limits. However, Neb. Rev. Stat. § 29-2204.02(2)(c) (Reissue 2016) provides that if a defendant is convicted of a Class IV felony, the court shall impose a sentence of probation unless there are substantial and compelling reasons why the defendant cannot effectively and safely be supervised in the community. The district court did find that there were several substantial and compelling reasons why Brungardt could not be supervised on probation, including, for example: Brungardt failed to comply with terms of probation in recent cases; a lesser sentence would depreciate the seriousness of the crime; a lesser sentence would promote disrespect for the law; the risk is substantial that during a period of probation Brungardt would engage in additional criminal conduct; Brungardt is in need of correctional treatment that can be provided most effectively by commitment to a correctional facility; Brungardt had not led a law-abiding life for a substantial period of time prior to this offense; and the court cannot find that the character and attitudes of Brungardt indicate he is unlikely to commit another crime. We conclude that the record in this case supports the district

- 13 -

court's determination that there were substantial and compelling reasons to withhold probation. See *State v. Baxter*, 295 Neb. 496, 888 N.W.2d 726 (2017) (determination of whether substantial and compelling reasons exist to deny probation under § 29-2204.02(2)(c) is within the trial court's discretion and will not be reversed absent an abuse of discretion).

In case No. A-16-566, Brungardt's probation was revoked and he was sentenced to 12 to 12 months' imprisonment on his Class I misdemeanor conviction for attempted possession of a controlled substance. His offense occurred before the effective date of L.B. 605, and was punishable by up to 1 year imprisonment, a $1,000 fine, or both fine and imprisonment. See § 28-106 (Cum. Supp. 2014). Brungardt's sentence is within the statutory limits.

Having considered the relevant factors in this case, including Brungardt's past failures complying with probation, we find that sentences of prison instead of probation were not an abuse of discretion and such sentences are therefore affirmed.

## VI. CONCLUSION

For the reasons stated above, we find that Brungardt was properly advised of the possible penalties at the plea hearing. We further find that the district court did not abuse its discretion in denying Brungardt's motion to continue sentencing, and Brungardt was not prejudiced by counsel's failure to make such motion earlier. Additionally, Brungardt's sentences for case No. A-16-564 (Count II) and for case No. A-16-566 were not an abuse of discretion and are affirmed.

However, we find that the sentence imposed on Count I of case No. A-16-564, was not within the statutory limits for a Class I misdemeanor because it included a period of post-release supervision. Consequently, we vacate Brungardt's sentence for Count I in case No. A-16-564 and remand the cause for resentencing.

JUDGMENT IN NO. A-16-564 AFFIRMED IN PART,
AND IN PART VACATED AND CAUSE
REMANDED WITH DIRECTIONS.
JUDGMENT IN NO. A-16-566 AFFIRMED.